The CITY OF PARIS, Texas, Appellant,

v.

Felix Clifton McDOWELL, Appellee.

No. 06–01–00095–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 4, 2002.

Decided April 26, 2002.

James Corley Henderson, Wolfe, Clark, Henderson & Tidwell, LLP, Sherman, for appellant.

David C. Turner, Jr., Turner & Turner, LLP, Bonham, Michael T. Maher, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Felix McDowell sued the City of Paris, Texas, and Tony Waggoner for damages, alleging that Waggoner negligently caused a rear-end collision with a vehicle driven by McDowell, and that Waggoner was acting within the course and scope of his employment with the City when the collision occurred. The City did not contest negligence, and the case was tried before a jury on the issues of causation and damages. The jury awarded McDowell approximately $16,000.00 in damages, but did not award him any damages for pain and suffering or for loss of earning capacity.[1]

McDowell filed a motion for new trial, contending that the jury's finding was against the great weight and preponderance of the evidence. The trial court granted McDowell's motion. McDowell then filed a motion to consolidate the case with a negligence suit he had filed against L.A. Davidson arising from another rear-end collision that occurred after the collision involving Waggoner. The record shows the collision with the City's vehicle driven by Waggoner occurred in April 1993, and the collision with Davidson occurred in October 1996. In his motion, McDowell contended the two cases in-volved common issues of fact because both Davidson and the City would argue that McDowell's injury resulted from the collision caused by the other. The trial court granted McDowell's motion.[2]

The case was again tried to a jury on the issues of causation and damages. The jury awarded McDowell approximately $248,000.00, including damages for pain and suffering and for loss of earning capacity.[3] The jury also found the City 100 percent responsible for the damages. The trial court rendered judgment accordingly.

In its first issue, the City contends the trial court abused its discretion in admitting the testimony of John Smith, one of McDowell's expert witnesses. The City contends Smith's opinions should not have been admitted because McDowell failed to establish that the foundation on which Smith's opinions were based was reliable.

McDowell contends the City failed to preserve its complaint for appeal. The City first objected to Smith giving "any opinion regarding the effect of the impact on the human body [because] the witness is not qualified as an expert on the human body or in the field of medicine or in any related science." The trial court sustained the objection because McDowell had not, at that time, presented a foundation for Smith to testify about anything related to biomechanics.

The City next objected "to [Smith's] opinion of what happens to people [in a collision]." The trial court sustained the

---

1. The jury awarded nothing for past and future physical pain and mental anguish, nothing for loss of past earnings, nothing for loss of future earning capacity, $3,000.00 for past physical impairment, $5,000.00 for future physical impairment, and $8,057.00 for past medical and hospital care.

2. McDowell and Davidson later settled.

3. The jury awarded $95,000.00 for past and future physical pain and mental anguish, $112,600.00 for loss of future earning capacity, $8,000.00 for past physical impairment, nothing for future physical impairment, $7,680.81 for past medical care, and $25,000.00 for future medical care.

City's objection because the witness had not given a definition of biomechanics.

The City's third objection was that McDowell listed Smith in its discovery responses as a collision reconstruction expert, rather than a biomechanics expert, and that McDowell failed to disclose in discovery that Smith has a master of science degree in biomechanics. The trial court overruled these objections.

Finally, the City asked the trial court:

[Defendant's Counsel]: One last thing, Your Honor. Do I understand the court's ruling that the witness will be allowed to testify regarding his opinion as to whether this accident could have caused the injuries that the plaintiff is claiming? Or is that not a part of the ruling that the court has made yet?

THE COURT: I think that this witness is qualified by education and experience to render that opinion, and I'm going to permit him to do so.

[Defendant's Counsel]: Would I be required to make any further objection, or can my objection just be noted in the record as a running objection to that testimony?

THE COURT: I would prefer that you just—I will be glad to grant you a running objection to everything I have ruled on without you having to repeat it, but I want to urge you to do whatever you feel is necessary to protect your own record. I will grant your running object [sic] concerning his qualifications and expertise.

The City contends Smith's opinions should not have been admitted in evidence because the scientific bases of those opinions are logically flawed. The City contends the foundation of Smith's opinions is deficient because Smith did not personally inspect the vehicles or the scene of the collision, but relied exclusively on photo-graphs of the vehicles at the scene. The City also contends Smith did not speak with the damage appraisers, did not speak to any of the witnesses, and did not review the circumstances of the collision until approximately seven and one-half years after it occurred. The City further contends Smith did not consider the effect of McDowell's previous experiences of participating in college and professional football or his involvement in the 1996 collision.

■ We agree with McDowell that this issue is not preserved for our review. To preserve an issue for appellate review, the record must demonstrate that (1) the complaint was made to the trial court by a timely request, objection, or motion, which stated the grounds of the objection with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and (2) the trial court ruled on the request, objection, or motion either explicitly or implicitly or refused to rule on the request, objection, or motion and the complaining party objected to the refusal. TEX.R.APP. P. 33.1(a).

■ In this case, the City objected to Smith's qualifications and expertise. The trial court overruled the City's objections, but expressly stated it was granting a running objection concerning those issues. The City did not present any objection regarding the foundation on which Smith's opinions were based.

■ The City also contends the trial court erred in admitting Smith's testimony because Smith's curriculum vitae (CV) did not disclose any academic training in the field of biomechanics and McDowell did not supplement his discovery responses to disclose any such academic training. Smith's CV recites he has a bachelor of science degree in geophysical engineering and a master of science degree in electrical

engineering. His CV does not reflect a degree in biomechanics.

At trial Smith testified he completed his course work for his master of science degree in biomechanics in November 2000 and received his degree in December 2000. It is not clear when McDowell supplied his discovery responses to the City, but Smith's preliminary report, which was included in the discovery response, is dated November 6, 2000. The trial in this case was held on February 26, 2001.

Regarding testifying experts or consulting experts whose mental impressions or opinions have been reviewed by a testifying expert, TEX.R. CIV. P. 192.3(e) makes discoverable, among other things, the subject matter on which a testifying expert will testify and the expert's current resume and bibliography. TEX.R. CIV. P. 192.3(e)(2); *see also* TEX.R. CIV. P. 194.2(f). In responding to written discovery, a party must make a complete response based on all information reasonably available to the responding party or the party's attorney at the time the response is made. TEX.R. CIV. P. 193.1.

Arguably, McDowell did not have a duty to supplement his discovery response because the record does not disclose that the City specifically sought Smith's "current resume and bibliography," as Rule 192.3(e)(2) allows. Rather, McDowell sought:

> [T]he name, address, and telephone number of each expert witness you may call at trial as an expert witness . . . and for each such witness: 1) state the subject matter on which the expert is expected to testify; 2) state the mental impressions and opinions held by the expert concerning any issue in this case; and (3) state the facts known to the expert which relate to or form the basis of the mental impressions and opinions held by the expert.

However, assuming McDowell's duty to supplement arose from the fact of his earlier disclosure of Smith's CV, the issue is not properly preserved for our review. If a party learns that the party's discovery response is no longer complete and correct, the party must amend or supplement the response (to the extent the written discovery sought information other than the identity of persons with knowledge of relevant facts, trial witnesses, or expert witnesses) unless the additional or corrective information has been made known to the other party in writing, on the record at a deposition, or through other discovery responses. TEX.R. CIV. P. 193.5(a); *see also* TEX.R. CIV. P. 195.6. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information not timely disclosed unless the trial court finds: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other party. TEX.R. CIV. P. 193.6(a).

Here the information subject to exclusion was the fact that Smith obtained his master of science degree in biomechanics. This information was disclosed at trial on direct examination without a timely objection. The record shows that McDowell asked Smith to state his educational and professional background and his experience and training in accident reconstruction, engineering, and biomechanics. Smith responded, without objection, with a recitation of his credentials, including his master of science degree in biomechanics. Only much later did the City object on the ground "there was no mention in any respect of a masters [sic] of science degree

in biomechanics" in the CV McDowell produced in his discovery response.

As mentioned previously, to preserve an issue for review, the record must demonstrate that the complaint was made to the trial court by a timely request, objection, or motion which stated the grounds for the requested ruling with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX.R.APP. P. 33.1(a). Here, the objection was not made timely, and the City's specific objection was not made clear from the context of its previous objections, which only attacked Smith's qualifications to testify as an expert in biomechanics.

■ The City also contends the trial court erred in admitting Smith's testimony because McDowell failed to disclose a notebook of material to which Smith referred at trial and certain correspondence between Smith and McDowell's attorney. This issue is improperly briefed. TEX. R.APP. P. 38.1(h). The City has not shown where it requested this material from McDowell and has not presented any authority showing why it was entitled to the material.

■ The City also contends the trial court erred in admitting Smith's testimony regarding the biomechanical forces exerted in the accident because McDowell did not properly inform the City in its discovery responses that Smith would testify concerning that subject.[4] In his response to the City's discovery request, McDowell disclosed Smith as a testifying expert. Specifically, McDowell disclosed:

Mr. Smith, a reconstruction expert, will testify as to all aspects of the accident investigation and reconstruction. He will testify as to the negligence of Tony Lee Waggoner and the City of Paris, the proximate cause of the accident and will assess Tony Lee Waggoner's conduct in relation to the accident.

Mr. Smith has reviewed the photographs of the vehicles involved, the accident report prepared by the police officer that investigated the collision, and copies of vehicle repair estimates. He has been or will be furnished with depositions of fact witnesses in this case. Mr. Smith is expected to testify that the road conditions at the time of the occurrence in question were not hazardous and that the failure of Tony Lee Waggoner to keep a proper lookout, failure to make a proper application of his brakes, and failing to make a timely application of his brakes was negligence and the proximate cause of the occurrence in question.

Mr. Smith's curriculum vitae is attached as Exhibit A and a copy of his Preliminary Report is attached as Exhibit B.

McDowell's discovery response discloses that Smith would testify regarding "all aspects of the accident investigation and reconstruction," which would certainly include the forces exerted on McDowell that could cause his injury. Regarding Smith's qualifications as an expert in biomechanics, Smith's CV recites that he has been associated as a staff engineer with Raymond P. Smith and Associates in Denver, Colorado, since December 1991. In that capacity, he performs accident investigations and reconstructions and analyses of "occupant kinematics/injury mechanisms" and biomechanics.

Smith testified he listed in his CV, under the heading "Continuing Education,"

---

4. This issue is properly preserved because, at the time the City made its objection, Smith had not given an opinion concerning whether the force from the collision could cause McDowell's injury.

the courses and seminars he took in pursuit of his master of science degree in biomechanics. The continuing education courses listed in Smith's CV include "Head & Neck Injury Symposium," "Accidental Injury: Biomechanics & Prevention," "Biomechanics of Accidents," "Whiplash Symposium," and attendance at the twenty-first through twenty-sixth "International Workshop[s] on Human Subjects for Biomechanical Research." Smith's CV also reveals he has written an article titled "The Physics, Biomechanics and Statistics of Rear Impacts," and given speeches titled "Biomechanics," "Biomechanics and Accident Reconstruction," "Principles of Accident Reconstruction: Physics and Biomechanics," and "Countering the Opposition's Biomechanical Expert."

Smith's preliminary report recites Smith's conclusion that, "The injuries reported are consistent with the applied forces in the collision." The City contends, however, that "a report is not a 'discovery response' as envisioned by Rule 193.6." The City's contention overlooks the fact that Smith's report was included as an attachment to McDowell's discovery response. Given the above disclosures, we conclude that the City had sufficient notice of the possible scope of Smith's testimony.

 In its second issue, the City contends there was no evidence or insufficient evidence to support the jury's finding that the 1993 collision was the cause of McDowell's injury and that the City was completely responsible. In determining whether there is no evidence of probative force to support a jury's finding, we must consider all of the evidence in the light most favorable to the party in whose favor the verdict has been rendered, and we must indulge every reasonable inference that can be deduced from the evidence in that party's favor. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.

1997). We will sustain a no-evidence issue when (a) there is a complete absence of evidence of a vital fact; (b) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.

 When considering a factual sufficiency challenge to a jury's verdict, we consider and weigh all of the evidence, not just the evidence supporting the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Id.* We are not a fact-finder. Accordingly, we may not pass on the witnesses' credibility or substitute our judgment for the jury's, even if the evidence would clearly support a different result.

 McDowell called as witnesses two neurosurgeons who had examined him. Dr. James Bland testified he first saw McDowell in October 1993, after the 1993 collision with the City vehicle; again in January 1996; and a third time in January 1997, after the 1996 collision with Davidson. Dr. Charles Gordon testified McDowell was referred to him in 1999.

Both Bland and Gordon testified McDowell complained of pain between his shoulder blades and down his back. Both reviewed magnetic resonance imaging (MRI) scans and a myelogram. Both doctors concluded McDowell had a herniated disk between his fifth and sixth vertebrae. Both testified the MRIs showed little

change in McDowell's condition since the first MRI was taken in 1993.

Bland testified McDowell's injury was, within reasonable medical probability, caused by the 1993 collision with Waggoner, the City's employee. He testified the 1996 collision with Davidson irritated McDowell's condition by, for a time, increasing his pain, but the collision with Davidson did not cause a material change in McDowell's condition. Gordon testified that McDowell's injury was consistent with an injury that could be suffered in an automobile collision. Smith, the accident reconstruction expert, testified the forces exerted in the collision could have caused McDowell's injury.

Both Bland and Gordon admitted that their conclusions were based on McDowell telling them he did not have pain in his back before the 1993 collision, but had pain afterward. Bland testified McDowell's experiences of playing four years of college football and attending professional football camps might cause a degenerative disk condition that would not surface until later. However, Gordon testified it would be "highly unlikely" that McDowell would have sustained his injury playing football and not have known about it or reported it earlier.

McDowell testified that on the day of the 1993 collision, he was waiting at a red light preparing to turn. He testified the impact of the rear-end collision sent his truck forward fifteen to eighteen feet. He immediately felt a "tingling" in his back. The pain got worse until he eventually went to the emergency room that evening.

McDowell and his wife, Cathy, both testified that McDowell has lived with pain since the 1993 collision. McDowell testified the pain has gotten worse as he has gotten older. He has taken pain medication and antidepressants consistently since 1993.

McDowell testified he had no back problems before the 1993 collision. He testified that in 1984 and 1985, he received thorough physical examinations before attending and being released from training camps with the Washington Redskins and the Green Bay Packers, respectively, and had no evidence of back trouble. He testified that after being "cut" at training camp in 1983, he worked as a painting and construction contractor for several years, which he testified involved physically demanding work. On cross-examination, however, the City presented a note in McDowell's medical records from 1990 in which a doctor, who treated McDowell for an ulcer, noted McDowell's complaints about high back and low back pain, which the doctor characterized as "musculoskeletal."

McDowell testified that in the 1996 collision, Davidson "sideswiped" him. He testified the collision caused swelling in his back, much like what happens to him after a hard day's work. On cross-examination, however, he admitted he alleged in his pleadings in his suit against Davidson that in the 1996 collision, "he was thrown about inside [his] vehicle with unusual force and violence"; that he "suffered blows to [his] head, neck, back and diverse other parts" of his body; that his "entire body was bruised, battered and contused"; that he suffered "great shock to his nervous system"; that he suffered "great physical and mental pain, suffering and anguish"; and that the injuries he sustained in that collision are permanent in nature.

Reviewing the record in this case, we conclude there is sufficient evidence to support the jury's finding that the 1993 collision was the cause of McDowell's injury and that the City was 100 percent responsible for those injuries. Bland testified McDowell's injury was caused by the

1993 collision. Gordon testified McDowell's injury was consistent with an injury that could be suffered in an automobile collision.

Bland and Gordon both testified McDowell's condition did not change from 1993 to 1999, even after the 1996 collision. Though McDowell's pleadings in his suit against Davidson alleged he received serious and permanent injuries in the 1996 collision, the jury was free to give greater weight to evidence that McDowell's condition did not change from 1993 to 1999.

Though both Bland and Gordon agreed that their conclusions depended on the premise that McDowell did not have a pre-existing back problem, McDowell testified he did not have a back injury before the 1993 collision. Though there is evidence that McDowell complained of back pain in 1990, the jury could have rationally believed that complaint arose from some other cause.

Though the City contends McDowell's injury could have resulted from McDowell's experience as a football player, the record shows McDowell last played football in 1985 and received a physical examination on his release that revealed no back injury. Further, Gordon testified it is highly unlikely that McDowell could have received his injury playing football and not have been aware of it.

The judgment is affirmed.