Omar Elhamad, d/b/a R.B. Const. and d/b/a R.B. Const. Eng'r v. Quality Oil Trucking Service, Inc.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-412-CV

OMAR ELHAMAD, D/B/A R.B. APPELLANT

CONSTRUCTION AND D/B/A R.B. 

CONSTRUCTION ENGINEERS

V.

QUALITY OIL TRUCKING SERVICE, INC. APPELLEE

------------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  
Introduction

Appellee Quality Oil Trucking Service, Inc. (“QOTS”)
 filed suit on a sworn account.  
See
 T
ex
. R. C
iv
. P. 185.
  Following a bench trial
, the trial court entered a $16,661.24 judgment for QOTS 
and against appellant Omar Elhamad (“Elhamad”)
 d/b/a R.B. Construction (“RBC”)and d/b/a R.B. Construction Engineers
 (“RBCE”) and Nazih Aldajani
 jointly and severally.
(footnote: 2)  
In three issues, Elhamad contends that the evidence is factually insufficient to establish his liability for the account sued upon, that QOTS failed to meet its burden of proving the reasonableness of the charges for the services sued upon, and that the trial court abused its discretion by awarding attorney’s fees against Elhamad.  We will affirm.

II.  Factual and Procedural Background

QOTS initially filed a suit on a sworn account against multiple defendants, including Elhamad.  Following a bench trial, the trial court entered judgment for QOTS and against all defendants, including Elhamad.  The trial court, however, granted Elhamad’s motion for new trial and severed QOTS’s claims against Elhamad from its claims and judgment against the other defendants.  QOTS then amended its pleadings to add Nazih Aldajani as a defendant.  QOTS obtained a partial default judgment against Aldajani and proceeded to trial on its claims against Elhamad.  Following a second bench trial, the trial court entered a final judgment for QOTS and against Elhamad and Aldajani jointly and severally.

QOTS offers services to customers who utilize underground storage petroleum tanks.  QOTS’s services include removing these tanks, emptying the fuel from the tanks, and removing that fuel to a regulated facility where the liquids are then properly disposed.  Jack Little (“Little”), QOTS’s operations manager, testified that QOTS provided services to RBC.  RBC accepted QOTS’s services and agreed to pay QOTS based upon QOTS’s schedule of charges. 
 QOTS had enjoyed a long-standing business relationship with RBC since the late seventies.  RBC was originally a sole proprietorship owned and operated by Thomas Butler and based out of Wise County, Texas.  After Thomas Butler’s death, his son, Rodney Butler (“Butler”), took over RBC and eventually struck up a business alliance with Aldajani, Elhamad, and the other defendants involved in this matter prior to severance. 

During the course of this business relationship, RBCE was formed and an additional office site was opened in Fort Worth, Tarrant County, Texas, to house both RBC and RBCE.  
Butler testified that Aldajani was in charge of running the operational aspects of both RBC and RBCE.  Elhamad’s business card identifies him as the marketing manager for RBCE.  Additionally, Elhamad was the owner of a third business entity, J.E. Construction (“JEC”
).  Elhamad’s business shared RBC and RBCE’s Tarrant County business location and their Wise County mailing address. 

At trial, Butler explained that RBC, RBCE, and JEC all operated as one entity, sharing office space, employees, office telephone and facsimile lines, and advertising.  Little likewise testified that RBC and RBCE were “one and the same.”  
Additionally, the owners of all three entities interchangeably signed quotations and/or contracts for the various business entities.  On multiple occasions, Elhamad signed RBC contracts with customers as president of RBC.  Bobby Starns testified that when he was employed by RBC, he took orders from Elhamad.  Starns said that Elhamad and Butler were either “principals or part owners of RBC.”

When Butler performed construction work as or for RBC, RBCE, or JEC and needed work relating to underground storage petroleum tanks, he called QOTS to perform the work.  
QOTS continued to provide services, regardless of which entity ultimately requested the services, and QOTS invoiced RBC on its existing account for the services.  At the time of trial, QOTS was owed an unpaid account balance of $16,661.24 on invoices dated October 31, 1998 through March 9, 1999.

QOTS’s attorney testified that he has been a licensed attorney since 1971 and has practiced in Graham, Texas since 1977.  He opined that $150 an hour was a reasonable hourly rate and that the services he provided to QOTS were necessary.  Based on the number of hours of work he had performed multiplied by the hourly rate of $150, he requested that his client be awarded attorney’s fees in the amount of $13,695.

After the trial court entered judgment for QOTS, no findings of fact or conclusions of law were requested or filed.

III.  Legal and Factual Sufficiency Issues on Appeal

A. Standard of Review

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court’s judgment implies all findings of fact necessary to support it.  
BMC Software Belgium, N.V. v. Marchand
, 83 S.W.3d 789, 795 (Tex. 2002); 
Pharo v. Chambers County
, 922 S.W.2d 945, 948 (Tex. 1996).  Where a reporter’s record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues.  
Roberson v. Robinson
, 768 S.W.2d 280, 281 (Tex. 1989).  Where such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact.  
Id.

In determining “no-evidence” issues, we are to consider only the evidence and inferences that tend to support the findings and disregard all evidence and inferences to the contrary.  
Bradford v. Vento
, 48 S.W.3d 749, 754 (Tex. 2001); 
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
In re King’s Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cazarez
, 937 S.W.2d at 450; 
Leitch v. Hornbsy
, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
,  77 S.W.3d 253, 262 (Tex. 2002).

A “no evidence” issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v.
 
Martinez
, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Claver, 
“No
 
Evidence” and “Insufficient Evidence” Points of Error
, 38 
Tex. L. Rev
. 361, 362-63 (1960)), 
cert. denied
, 526 U.S. 1040 (1999).

An assertion that the evidence is “insufficient” to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination.  
Mar. Overseas Corp. v. Ellis,
 971 S.W.2d 402, 406-07 (Tex.)
, cert. denied, 
525 U.S. 1017 (1998).

B. Factual Sufficiency of Evidence of Elhamad’s Liability

In issue one, Elhamad contends that factually insufficient evidence exists to establish that he is liable for QOTS’s invoices to RBC because no formal agreement existed between him and RBC or anyone else.  
Elhamad contends that his liability is predicated on a partnership that QOTS did not prove.

A written or oral agreement is not necessary to create a partnership.  
See Cavazos v. Cavazos, 
339 S.W.2d. 224, 226 (Tex. Civ. App.—San Antonio 1960, writ ref’d n.r.e.); 
see also Long v. Lopez
, No. 2-02-062-CV, slip op. at 3, 2003 WL 21983204, at *6 n.2 (Tex. App.—Fort Worth Aug. 21, 2003, no pet. h.).  It is not essential that the parties agree to become partners by name, or that their agreement be an express one.  
Cavazos, 
339 S.W.2d. at 226.
  
If by implied agreement they assume a relationship that the law considers a partnership, they become partners in fact.  
Id.; see
 
Tex. Rev. Civ. Stat. Ann. 
art. 6132b-2.02(a) (Vernon Supp. 2003) (stating “an association of two or more persons to carry on a business for profit as owners creates a partnership, whether the persons intend to create a partnership and whether the association is called a ‘partnership,’ ‘joint venture,’ or other name.”).  Once the existence of a partnership has been determined from the facts and circumstances, liability will be found to apply to all partners, both jointly and severally.  
Brown v. Coates
, 420 S.W.2d 822, 823 (Tex. Civ. App.—Corpus Christi 1967, writ ref’d n.r.e.); 
see also
 
Tex. Rev. Civ. Stat. Ann. 
art. 6132b-3.04 (recognizing that with two exceptions not applicable here, all partners are liable jointly and severally for all debts and obligations of the partnership unless otherwise agreed by the claimant or provided by law).

The trial court’s judgment against Elhamad implies a fact finding that Elhamad was a partner in RBC.  
See, e.g., Cellular Mktg., Inc. v. Houston Cellular Tel. Co.
, 838 S.W.2d 331, 333 (Tex. App.—Houston [14
th
 Dist.] 1992, writ denied) (holding that in the absence of findings of fact and conclusions of law, appellate court must assume trial court found all the necessary facts to support its judgment).  We have carefully reviewed all of the evidence, and 
the evidence supporting this implied finding is not so weak nor is the evidence contrary to this finding so overwhelming that the finding should be set aside and a new trial ordered.  
See Garza
, 395 S.W.2d at 823.

The evidence presented established that Elhamad signed several 
customer Quotation & Contract forms on behalf of RBC.  In fact, on one such document, Elhamad signed as president of RBC.  Advertising, approved by Elhamad, shows a picture of Elhamad under the RBC logo and states that Elhamad has “joined forces” with Butler to form RBCE.  Little testified that, on at least one occasion, when he questioned Butler about payment for QOTS’s services, Butler handed the telephone receiver to Elhamad, who then assured Little that QOTS “would be getting [their] money.”  Moreover, Elhamad used the Wise County address of RBC as a mailing address for JEC.  Elhamad admitted that both Butler and Aldajani signed at least one Quotation & Contract form as representatives of JEC.  Elhamad also supervised Starns, an RBC employee.  We hold that the evidence is factually sufficient to support the trial court’s implied finding that Elhamad was a partner of RBC and was, therefore, jointly and severally liable for RBC’s debt to QOTS. We overrule Elhamad’s first issue.

C.  Legal Sufficiency of Evidence of Reasonableness of Charges

In issue two, Elhamad argues that QOTS failed to prove the reasonableness of its charges to RBC for the services QOTS provided. 
 In a suit on a sworn account, the plaintiff bears the burden of proving the justness of the charges.  This may be done in one of two ways:  the plaintiff may 
either
 show that the charges resulted from an agreement between the parties 
or
 that the charges were usual, customary, or reasonable.  
Andrews v. E. Tex. Med. Ctr.-Athens
, 885 S.W.2d 264, 266 
(Tex. App.—Tyler 1994, no writ); 
Pat Womack, Inc. v. Weslaco Aviation, Inc.,
 
688 S.W.2d 639, 641 (Tex. App.—Corpus Christi 1985, no writ).  Again, because no findings of fact exist in the record before us, the trial court’s judgment for QOTS implies a finding that
 QOTS’s charges resulted from an agreement between it and RBC or a finding that 
QOTS’s charges were usual, customary, or reasonable.  
See BMC Software
, 83 S.W.3d at 795.

At trial, Little specifically testified that Elhamad was doing business as RBC, that Elhamad and RBC “agree[d] to pay the usual and customary price that [QOTS] charged for those items” listed on the invoices, that Elhamad and RBC “agree[d] orally to make payment based upon [QOTS’s] schedule of charges,” and that “the goods and services that [QOTS] delivered and rendered to [Elhamad and RBC] charged out at the same prices that [QOTS] would have charged at that point in time for any other customer for those same types of services and materials in those same areas.”  Little further testified that Elhamad spoke to him on behalf of RBC and assured him that QOTS’s charges would be paid. 

Viewing this evidence in the light most favorable to the trial court’s implied fact findings, and disregarding all evidence and inferences to the contrary, we hold that the evidence is legally sufficient to support the trial court’s implied findings that QOTS’s charges resulted from an agreement between it and RBC or that 
QOTS’s charges were usual, customary, or reasonable.  
See Nichols v. William A. Taylor, Inc., 
662 S.W.2d. 396, 401-02 (Tex. App.—Corpus Christi 1983, no writ).
  We overrule Elhamad’s second issue.

IV.  Attorney’s Fees

In his third issue, Elhamad claims that the trial court abused its discretion by awarding attorney’s fees to QOTS because QOTS failed to present the account to Elhamad for payment and because QOTS did not properly disclose its attorney as an expert witness.

A.  Presentment of Account

Elhamad argues that QOTS failed to comply with the requirements of section 38.002 of the Texas Civil Practice and Remedies Code by not presenting the debt to him for payment.  
Tex. Civ. Prac. & Rem. Code
 
Ann. §
 38.002 (Vernon 1997).  As a prerequisite to the recovery of attorney’s fees, the statute requires that the party seeking such fees present its claim for payment to the party it claims owes the charges.  
Id.
  “The purpose of the requirement for presentation of the claim is to allow the person against whom it is asserted an opportunity to pay a claim within 30 days after [he or she has] notice of the claim without incurring an obligation for attorney’s fees.”  
Jones v. Kelley
, 614 S.W.2d 95, 100 (Tex. 1981).  Attorney's fees are proper and may be awarded in a suit on a sworn account, provided the party complies with 38.002's presentment requirement.  
Id.
;
 see also 
Tex. Civ. Prac. & Rem. Code Ann.
 
§ 38.001(7)
.

Here, QOTS’s attorney mailed a demand for payment on April 6, 1999 to the Seminary Drive address of RBC.  Elhamad testified that his business enterprises were located at this address.  Additionally, Elhamad testified that he both signed RBC contracts and listed himself as president of RBC.  We hold that, when Elhamad held himself out as the president of RBC and QOTS mailed its demand letter to the Fort Worth address where RBC and Elhamad officed, QOTS presented its claim to Elhamad.  
See
 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 38.002(2) (authorizing presentment of the claim to “the opposing party or to a duly authorized agent of the opposing party”); 
Rosen v. Peck
, 445 S.W.2d 241, 247 (Tex. Civ. App.—Waco 1969, no writ) (holding presentment of claim to bowling alley’s lessee constituted demand on bowling alley owners when lessee was acting as agent for bowling alley owners within scope of his authority). 

B.  Adequate Disclosure of Expert Testimony

Elhamad makes numerous arguments asserting that QOTS’s attorney’s testimony was not admissible.  Elhamad first contends that QOTS’s responses to his request for disclosure were inadequate to permit QOTS’s attorney to testify.  Specifically, he complains that QOTS failed to adequately disclose its expert witness information prior to trial because QOTS’s response did not contain a brief summary of the basis for its attorney’s testimony and did not contain “all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert’s testimony” as required by Texas Rule of Civil Procedure 194.2.  
Tex. R. Civ. P.
 194.2(f)(4)(A).  Elhamad also complains that QOTS’s response to Elhamad’s request for disclosure did not “actually demonstrate qualifications to testify as to reasonable and necessary attorney’s fees.”  Elhamad claims that “billing documents would be extremely important to be able to cross-examine” QOTS’s attorney.  Elhamad also argues that the trial court abused its discretion by admitting QOTS’s attorney’s testimony without a showing of good cause.  

The discovery rule requiring disclosure of the expert’s testimony before trial is intended to provide adequate information about the expert’s opinions to allow the opposing party the necessary information to prepare to cross-examine the expert and to rebut this testimony with its own experts.  
Exxon Corp. v. W. Tex. Gathering Co.
, 868 S.W.2d 299, 304 (Tex. 1993).  “The trial court is the gatekeeper of expert evidence, and appellate courts cannot usurp that function.” 
Reliance Ins. Co. v. Denton Cent. Appraisal Dist.
, 999 S.W.2d 626, 630 (Tex. App.—Fort Worth 1999, no pet.).

At the bench trial below, QOTS’s response to Elhamad’s request for disclosure was read into the record by counsel for Elhamad.  The record reflects that in addition to counsel’s name, address, and telephone number, this response included the following statements:  counsel would be testifying to attorney’s fees in this matter; counsel would opine that $150 per hour for representation plus expenses in this matter was reasonable; counsel would testify that reasonable fees, in the event of an appeal, would be $7,500, $2,500 more for filing a petition for review with the Texas Supreme Court, and $5,000 more if that petition for review were to be granted; any documents not provided were available for inspection at counsel’s office; counsel relied on no documents or “tangible things” to reach his opinion that $150 per hour in a matter like this was reasonable, other than his years of law practice and resulting civil litigation files; and, finally, counsel’s curriculum vitae was attached to the response.

The trial court overruled all of Elhamad’s objections and permitted QOTS’s counsel to testify about attorney’s fees.  As outlined above, QOTS’s counsel opined that $150 an hour was a reasonable hourly rate, that the services he provided to QOTS were necessary, and that based on the number of hours of work multiplied by an hourly rate of $150, his client should be awarded $13,695 in attorney’s fees.  
Counsel for Elhamad lodged no cross-examination whatsoever of QOTS’s counsel as to any dispute regarding the basis for his fees, his method of calculating those fees or any other substantive issue.  
See Ragsdale v. Progressive Voters League
, 801 S.W.2d 880, 881-82 (Tex. 1990) (holding clear, direct, and uncontroverted evidence of attorney’s fees is taken as true as a matter of law, especially when the opposing party has not rebutted the evidence).

Elhamad’s contentions that QOTS’s designation of its counsel as an attorney’s fees expert was inadequate in various ways is simply not supported by the record.  QOTS’s disclosure response was read into the record, and we cannot say that the trial court abused its discretion by concluding that QOTS’s designation of counsel as an expert witness was adequate.  
See City of Paris v. McDowell
, 79 S.W.3d 601, 607-08 (Tex. App.—Texarkana 2002, pet. ref’d) (holding that information regarding anticipated expert testimony, similar to the information provided here, was adequate).
  

Elhamad’s appellate contention that “billing documents would be extremely important to be able to cross-examine the expert” was not raised as an objection to QOTS’s counsel’s testimony at trial.  The complaint on appeal must be the same as that presented in the trial court.  
See 
Tex. R. App. P
. 33.1(a).  An appellate court cannot reverse based on a complaint not raised in the trial court.  
See Banda
, 955 S.W.2d at 272.  Because counsel failed to raise this objection at trial, this complaint is not properly before us.

Elhamad contends that, pursuant to 
Alvarado v. Farah Mfg. Co. Inc.
, 830 S.W.2d 911 (Tex. 1992) (op. on reh’g), the trial court erred in allowing QOTS’s counsel’s testimony without a show of good cause for failure to designate him.  
Alvarado
 is not dispositive of the present case.  
Alvarado
, decided under the old discovery rules, addresses a plaintiff’s complete failure to identify a witness later called to testify, not the alleged lack of a “brief summary” of the witness’s testimony.  
Id.
 at 916.  Here, Elhamad admits that QOTS designated its counsel as an expert witness on attorney’s fees, but merely contends that the designation was inadequate.  As discussed above, the trial court did not abuse its discretion by concluding otherwise.  
See City of Paris, 
79 S.W.3d at 607-08.

Moreover, rule 193.6 permits an unnamed witness to testify if the court either finds good cause or finds that the failure to timely make the discovery response will not unfairly surprise or unfairly prejudice the other parties.  T
ex. R. Civ. P.
 193.6; 
Northwestern Nat’l County Mut. Ins. Co. v. Rodriguez
, 18 S.W.3d 718, 723 n.1 (Tex. App.—San Antonio 2000, pet. denied).  Here, Elhamad’s counsel conceded that the expert testimony concerning attorney’s fees was not a surprise.  Thus, even assuming that QOTS’s response to Elhamad’s request for disclosure request was somehow inadequate, because the expert testimony on attorney’s fees did not unfairly surprise Elhamad, it was within the trial court’s discretion to admit the evidence.  
See
 
Rodriguez
, 18
 
S.W.3d at
 
723.

For these reasons, we overrule Elhamad’s third issue.

V.  Conclusion

Having overruled each of Elhamad’s issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: DAY, LIVINGSTON, and WALKER, JJ.

DELIVERED:
 September 25, 2003

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Nazih Aldajani is not a party to this appeal.