COURT OF APPEALS 
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-412-CV

OMAR ELHAMAD, D/B/A R.B.                                                 APPELLANT 
CONSTRUCTION AND D/B/A R.B. 
CONSTRUCTION ENGINEERS
 
V.
 
QUALITY OIL TRUCKING SERVICE, INC.                                     APPELLEE 
 
------------
 
FROM THE 
90TH DISTRICT COURT OF YOUNG COUNTY 
 
------------
 
MEMORANDUM OPINION




------------
I. Introduction
        Appellee Quality Oil Trucking Service, Inc. (“QOTS”) filed suit on a sworn 
account. See Tex. R. Civ. P. 185. Following a bench trial, the trial court
entered a $16,661.24 judgment for QOTS and against appellant Omar Elhamad
(“Elhamad”) d/b/a R.B. Construction (“RBC”)and d/b/a R.B. Construction
Engineers (“RBCE”) and Nazih Aldajani jointly and severally.
 

 In three issues, 
Elhamad contends that the evidence is factually insufficient to establish his
liability for the account sued upon, that QOTS failed to meet its burden of
proving the reasonableness of the charges for the services sued upon, and that
the trial court abused its discretion by awarding attorney’s fees against
Elhamad. We will affirm.
II. Factual and Procedural Background
        QOTS initially filed a suit on a sworn account against multiple defendants, 
including Elhamad. Following a bench trial, the trial court entered judgment for 
QOTS and against all defendants, including Elhamad. The trial court, however, 
granted Elhamad’s motion for new trial and severed QOTS’s claims against 
Elhamad from its claims and judgment against the other defendants. QOTS 
then amended its pleadings to add Nazih Aldajani as a defendant. QOTS 
obtained a partial default judgment against Aldajani and proceeded to trial on 
its claims against Elhamad. Following a second bench trial, the trial court 
entered a final judgment for QOTS and against Elhamad and Aldajani jointly and 
severally.
        QOTS offers services to customers who utilize underground storage 
petroleum tanks. QOTS’s services include removing these tanks, emptying the 
fuel from the tanks, and removing that fuel to a regulated facility where the 
liquids are then properly disposed. Jack Little (“Little”), QOTS’s operations 
manager, testified that QOTS provided services to RBC. RBC accepted QOTS’s 
services and agreed to pay QOTS based upon QOTS’s schedule of charges.         QOTS had enjoyed a long-standing business relationship with RBC since 
the late seventies. RBC was originally a sole proprietorship owned and operated 
by Thomas Butler and based out of Wise County, Texas. After Thomas Butler’s 
death, his son, Rodney Butler (“Butler”), took over RBC and eventually struck 
up a business alliance with Aldajani, Elhamad, and the other defendants 
involved in this matter prior to severance. 
        During the course of this business relationship, RBCE was formed and an 
additional office site was opened in Fort Worth, Tarrant County, Texas, to 
house both RBC and RBCE. Butler testified that Aldajani was in charge of 
running the operational aspects of both RBC and RBCE. Elhamad’s business 
card identifies him as the marketing manager for RBCE. Additionally, Elhamad 
was the owner of a third business entity, J.E. Construction (“JEC”). Elhamad’s 
business shared RBC and RBCE’s Tarrant County business location and their 
Wise County mailing address. 
        At trial, Butler explained that RBC, RBCE, and JEC all operated as one 
entity, sharing office space, employees, office telephone and facsimile lines, 
and advertising. Little likewise testified that RBC and RBCE were “one and the 
same.” Additionally, the owners of all three entities interchangeably signed 
quotations and/or contracts for the various business entities. On multiple
occasions, Elhamad signed RBC contracts with customers as president of RBC. 
Bobby Starns testified that when he was employed by RBC, he took orders from
Elhamad. Starns said that Elhamad and Butler were either “principals or part
owners of RBC.”
        When Butler performed construction work as or for RBC, RBCE, or JEC 
and needed work relating to underground storage petroleum tanks, he called 
QOTS to perform the work. QOTS continued to provide services, regardless of 
which entity ultimately requested the services, and QOTS invoiced RBC on its
existing account for the services. At the time of trial, QOTS was owed an
unpaid account balance of $16,661.24 on invoices dated October 31, 1998
through March 9, 1999.
        QOTS’s attorney testified that he has been a licensed attorney since 
1971 and has practiced in Graham, Texas since 1977. He opined that $150 
an hour was a reasonable hourly rate and that the services he provided to 
QOTS were necessary. Based on the number of hours of work he had 
performed multiplied by the hourly rate of $150, he requested that his client be 
awarded attorney’s fees in the amount of $13,695. 
        After the trial court entered judgment for QOTS, no findings of fact or 
conclusions of law were requested or filed. 
III. Legal and Factual Sufficiency Issues on Appeal
A. Standard of Review
        In a trial to the court where no findings of fact or conclusions of law are 
filed, the trial court’s judgment implies all findings of fact necessary to support 
it. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 
2002); Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996). Where 
a reporter’s record is filed, however, these implied findings are not conclusive, 
and an appellant may challenge them by raising both legal and factual 
sufficiency of the evidence issues. Roberson v. Robinson, 768 S.W.2d 280, 
281 (Tex. 1989). Where such issues are raised, the applicable standard of 
review is the same as that to be applied in the review of jury findings or a trial 
court's findings of fact. Id. 
        In determining “no-evidence” issues, we are to consider only the evidence 
and inferences that tend to support the findings and disregard all evidence and 
inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 
2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 
1996); In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). 
Anything more than a scintilla of evidence is legally sufficient to support the 
finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornbsy, 935 S.W.2d 114, 
118 (Tex. 1996). More than a scintilla of evidence exists if the evidence 
furnishes some reasonable basis for differing conclusions by reasonable minds 
about the existence of a vital fact. Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co., 
77 S.W.3d 253, 262 (Tex. 2002). 
        A “no evidence” issue may only be sustained when the record discloses 
one of the following: (1) a complete absence of evidence of a vital fact; (2) the 
court is barred by rules of law or evidence from giving weight to the only 
evidence offered to prove a vital fact; (3) the evidence offered to prove a vital 
fact is no more than a mere scintilla of evidence; or (4) the evidence establishes 
conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. 
Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Claver, “No 
Evidence” and “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)), cert. denied, 526 U.S. 1040 (1999). 
        An assertion that the evidence is “insufficient” to support a fact finding 
means that the evidence supporting the finding is so weak or the evidence to 
the contrary is so overwhelming that the answer should be set aside and a new 
trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We are 
required to consider all of the evidence in the case in making this determination. 
Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 
U.S. 1017 (1998). 
B. Factual Sufficiency of Evidence of Elhamad’s Liability

        In issue one, Elhamad contends that factually insufficient evidence exists 
to establish that he is liable for QOTS’s invoices to RBC because no formal 
agreement existed between him and RBC or anyone else. Elhamad contends 
that his liability is predicated on a partnership that QOTS did not prove. 
        A written or oral agreement is not necessary to create a partnership. See 
Cavazos v. Cavazos, 339 S.W.2d. 224, 226 (Tex. Civ. App.—San Antonio 
1960, writ ref’d n.r.e.); see also Long v. Lopez, No. 2-02-062-CV, slip op. at 
3, 2003 WL 21983204, at *6 n.2 (Tex. App.—Fort Worth Aug. 21, 2003, no 
pet. h.). It is not essential that the parties agree to become partners by name, 
or that their agreement be an express one. Cavazos, 339 S.W.2d. at 226. If 
by implied agreement they assume a relationship that the law considers a
partnership, they become partners in fact. Id.; see Tex. Rev. Civ. Stat. Ann.
art. 6132b-2.02(a) (Vernon Supp. 2003) (stating “an association of two or
more persons to carry on a business for profit as owners creates a partnership,
whether the persons intend to create a partnership and whether the association
is called a ‘partnership,’ ‘joint venture,’ or other name.”). Once the existence
of a partnership has been determined from the facts and circumstances, liability
will be found to apply to all partners, both jointly and severally. Brown v.
Coates, 420 S.W.2d 822, 823 (Tex. Civ. App.—Corpus Christi 1967, writ ref’d
n.r.e.); see also Tex. Rev. Civ. Stat. Ann. art. 6132b-3.04 (recognizing that
with two exceptions not applicable here, all partners are liable jointly and
severally for all debts and obligations of the partnership unless otherwise agreed
by the claimant or provided by law).
        The trial court’s judgment against Elhamad implies a fact finding that 
Elhamad was a partner in RBC. See, e.g., Cellular Mktg., Inc. v. Houston 
Cellular Tel. Co., 838 S.W.2d 331, 333 (Tex. App.—Houston [14th Dist.] 1992, 
writ denied) (holding that in the absence of findings of fact and conclusions of 
law, appellate court must assume trial court found all the necessary facts to 
support its judgment). We have carefully reviewed all of the evidence, and the 
evidence supporting this implied finding is not so weak nor is the evidence 
contrary to this finding so overwhelming that the finding should be set aside 
and a new trial ordered. See Garza, 395 S.W.2d at 823. 
        The evidence presented established that Elhamad signed several customer 
Quotation & Contract forms on behalf of RBC. In fact, on one such document,
Elhamad signed as president of RBC. Advertising, approved by Elhamad, shows
a picture of Elhamad under the RBC logo and states that Elhamad has “joined
forces” with Butler to form RBCE. Little testified that, on at least one occasion,
when he questioned Butler about payment for QOTS’s services, Butler handed
the telephone receiver to Elhamad, who then assured Little that QOTS “would
be getting [their] money.” Moreover, Elhamad used the Wise County address
of RBC as a mailing address for JEC. Elhamad admitted that both Butler and
Aldajani signed at least one Quotation & Contract form as representatives of
JEC. Elhamad also supervised Starns, an RBC employee. We hold that the
evidence is factually sufficient to support the trial court’s implied finding that
Elhamad was a partner of RBC and was, therefore, jointly and severally liable
for RBC’s debt to QOTS. We overrule Elhamad’s first issue.C. Legal Sufficiency of Evidence of Reasonableness of Charges
        In issue two, Elhamad argues that QOTS failed to prove the 
reasonableness of its charges to RBC for the services QOTS provided. In a suit 
on a sworn account, the plaintiff bears the burden of proving the justness of the 
charges. This may be done in one of two ways: the plaintiff may either show 
that the charges resulted from an agreement between the parties or that the 
charges were usual, customary, or reasonable. Andrews v. E. Tex. Med. 
Ctr.-Athens, 885 S.W.2d 264, 266 (Tex. App.—Tyler 1994, no writ); Pat 
Womack, Inc. v. Weslaco Aviation, Inc., 688 S.W.2d 639, 641 (Tex.
App.—Corpus Christi 1985, no writ). Again, because no findings of fact exist
in the record before us, the trial court’s judgment for QOTS implies a finding
that QOTS’s charges resulted from an agreement between it and RBC or a
finding that QOTS’s charges were usual, customary, or reasonable. See BMC
Software, 83 S.W.3d at 795. 
        At trial, Little specifically testified that Elhamad was doing business as 
RBC, that Elhamad and RBC “agree[d] to pay the usual and customary price that 
[QOTS] charged for those items” listed on the invoices, that Elhamad and RBC 
“agree[d] orally to make payment based upon [QOTS’s] schedule of charges,” 
and that “the goods and services that [QOTS] delivered and rendered to 
[Elhamad and RBC] charged out at the same prices that [QOTS] would have 
charged at that point in time for any other customer for those same types of 
services and materials in those same areas.” Little further testified that 
Elhamad spoke to him on behalf of RBC and assured him that QOTS’s charges 
would be paid. 
        Viewing this evidence in the light most favorable to the trial court’s 
implied fact findings, and disregarding all evidence and inferences to the 
contrary, we hold that the evidence is legally sufficient to support the trial 
court’s implied findings that QOTS’s charges resulted from an agreement 
between it and RBC or that QOTS’s charges were usual, customary, or 
reasonable. See Nichols v. William A. Taylor, Inc., 662 S.W.2d. 396, 401-02 
(Tex. App.—Corpus Christi 1983, no writ). We overrule Elhamad’s second
issue.
IV. Attorney’s Fees
        In his third issue, Elhamad claims that the trial court abused its discretion 
by awarding attorney’s fees to QOTS because QOTS failed to present the 
account to Elhamad for payment and because QOTS did not properly disclose 
its attorney as an expert witness. 
        A. Presentment of Account 
        Elhamad argues that QOTS failed to comply with the requirements of 
section 38.002 of the Texas Civil Practice and Remedies Code by not 
presenting the debt to him for payment. Tex. Civ. Prac. & Rem. Code Ann. § 
38.002 (Vernon 1997). As a prerequisite to the recovery of attorney’s fees, 
the statute requires that the party seeking such fees present its claim for 
payment to the party it claims owes the charges. Id. “The purpose of the 
requirement for presentation of the claim is to allow the person against whom 
it is asserted an opportunity to pay a claim within 30 days after [he or she has] 
notice of the claim without incurring an obligation for attorney’s fees.” Jones 
v. Kelley, 614 S.W.2d 95, 100 (Tex. 1981). Attorney's fees are proper and 
may be awarded in a suit on a sworn account, provided the party complies with 
38.002's presentment requirement. Id.; see also Tex. Civ. Prac. & Rem. Code 
Ann. § 38.001(7). 
        Here, QOTS’s attorney mailed a demand for payment on April 6, 1999 to 
the Seminary Drive address of RBC. Elhamad testified that his business 
enterprises were located at this address. Additionally, Elhamad testified that 
he both signed RBC contracts and listed himself as president of RBC. We hold 
that, when Elhamad held himself out as the president of RBC and QOTS mailed 
its demand letter to the Fort Worth address where RBC and Elhamad officed, 
QOTS presented its claim to Elhamad. See Tex. Civ. Prac. & Rem. Code Ann. 
§ 38.002(2) (authorizing presentment of the claim to “the opposing party or to 
a duly authorized agent of the opposing party”); Rosen v. Peck, 445 S.W.2d 
241, 247 (Tex. Civ. App.—Waco 1969, no writ) (holding presentment of claim 
to bowling alley’s lessee constituted demand on bowling alley owners when 
lessee was acting as agent for bowling alley owners within scope of his 
authority). B. Adequate Disclosure of Expert Testimony 
        Elhamad makes numerous arguments asserting that QOTS’s attorney’s 
testimony was not admissible. Elhamad first contends that QOTS’s responses 
to his request for disclosure were inadequate to permit QOTS’s attorney to 
testify. Specifically, he complains that QOTS failed to adequately disclose its 
expert witness information prior to trial because QOTS’s response did not 
contain a brief summary of the basis for its attorney’s testimony and did not 
contain “all documents, tangible things, reports, models, or data compilations 
that have been provided to, reviewed by, or prepared by or for the expert in 
anticipation of the expert’s testimony” as required by Texas Rule of Civil 
Procedure 194.2. Tex. R. Civ. P. 194.2(f)(4)(A). Elhamad also complains that 
QOTS’s response to Elhamad’s request for disclosure did not “actually 
demonstrate qualifications to testify as to reasonable and necessary attorney’s 
fees.” Elhamad claims that “billing documents would be extremely important 
to be able to cross-examine” QOTS’s attorney. Elhamad also argues that the 
trial court abused its discretion by admitting QOTS’s attorney’s testimony 
without a showing of good cause. 
        The discovery rule requiring disclosure of the expert’s testimony before 
trial is intended to provide adequate information about the expert’s opinions to 
allow the opposing party the necessary information to prepare to cross-examine 
the expert and to rebut this testimony with its own experts. Exxon Corp. v. W. 
Tex. Gathering Co., 868 S.W.2d 299, 304 (Tex. 1993). “The trial court is the 
gatekeeper of expert evidence, and appellate courts cannot usurp that 
function.” Reliance Ins. Co. v. Denton Cent. Appraisal Dist., 999 S.W.2d 626, 
630 (Tex. App.—Fort Worth 1999, no pet.). 
        At the bench trial below, QOTS’s response to Elhamad’s request for 
disclosure was read into the record by counsel for Elhamad. The record reflects 
that in addition to counsel’s name, address, and telephone number, this 
response included the following statements: counsel would be testifying to 
attorney’s fees in this matter; counsel would opine that $150 per hour for 
representation plus expenses in this matter was reasonable; counsel would 
testify that reasonable fees, in the event of an appeal, would be $7,500, 
$2,500 more for filing a petition for review with the Texas Supreme Court, and 
$5,000 more if that petition for review were to be granted; any documents not 
provided were available for inspection at counsel’s office; counsel relied on no 
documents or “tangible things” to reach his opinion that $150 per hour in a 
matter like this was reasonable, other than his years of law practice and 
resulting civil litigation files; and, finally, counsel’s curriculum vitae was 
attached to the response. 
        The trial court overruled all of Elhamad’s objections and permitted QOTS’s 
counsel to testify about attorney’s fees. As outlined above, QOTS’s counsel 
opined that $150 an hour was a reasonable hourly rate, that the services he 
provided to QOTS were necessary, and that based on the number of hours of 
work multiplied by an hourly rate of $150, his client should be awarded 
$13,695 in attorney’s fees. Counsel for Elhamad lodged no cross-examination 
whatsoever of QOTS’s counsel as to any dispute regarding the basis for his
fees, his method of calculating those fees or any other substantive issue. See
Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881-82 (Tex. 1990)
(holding clear, direct, and uncontroverted evidence of attorney’s fees is taken
as true as a matter of law, especially when the opposing party has not rebutted
the evidence).
        Elhamad’s contentions that QOTS’s designation of its counsel as an 
attorney’s fees expert was inadequate in various ways is simply not supported 
by the record. QOTS’s disclosure response was read into the record, and we 
cannot say that the trial court abused its discretion by concluding that QOTS’s 
designation of counsel as an expert witness was adequate. See City of Paris 
v. McDowell, 79 S.W.3d 601, 607-08 (Tex. App.—Texarkana 2002, pet. ref’d) 
(holding that information regarding anticipated expert testimony, similar to the 
information provided here, was adequate). 
        Elhamad’s appellate contention that “billing documents would be 
extremely important to be able to cross-examine the expert” was not raised as 
an objection to QOTS’s counsel’s testimony at trial. The complaint on appeal 
must be the same as that presented in the trial court. See Tex. R. App. P. 
33.1(a). An appellate court cannot reverse based on a complaint not raised in 
the trial court. See Banda, 955 S.W.2d at 272. Because counsel failed to raise 
this objection at trial, this complaint is not properly before us. 
        Elhamad contends that, pursuant to Alvarado v. Farah Mfg. Co. Inc., 830 
S.W.2d 911 (Tex. 1992) (op. on reh’g), the trial court erred in allowing QOTS’s 
counsel’s testimony without a show of good cause for failure to designate him. 
Alvarado is not dispositive of the present case. Alvarado, decided under the old
discovery rules, addresses a plaintiff’s complete failure to identify a witness
later called to testify, not the alleged lack of a “brief summary” of the witness’s
testimony. Id. at 916. Here, Elhamad admits that QOTS designated its counsel
as an expert witness on attorney’s fees, but merely contends that the
designation was inadequate. As discussed above, the trial court did not abuse
its discretion by concluding otherwise. See City of Paris, 79 S.W.3d at 607-08.
        Moreover, rule 193.6 permits an unnamed witness to testify if the court 
either finds good cause or finds that the failure to timely make the discovery 
response will not unfairly surprise or unfairly prejudice the other parties. Tex. 
R. Civ. P. 193.6; Northwestern Nat’l County Mut. Ins. Co. v. Rodriguez, 18 
S.W.3d 718, 723 n.1 (Tex. App.—San Antonio 2000, pet. denied). Here,
Elhamad’s counsel conceded that the expert testimony concerning attorney’s
fees was not a surprise. Thus, even assuming that QOTS’s response to
Elhamad’s request for disclosure request was somehow inadequate, because
the expert testimony on attorney’s fees did not unfairly surprise Elhamad, it
was within the trial court’s discretion to admit the evidence. See Rodriguez,
18 S.W.3d at 723.
        For these reasons, we overrule Elhamad’s third issue. 
V. Conclusion
        Having overruled each of Elhamad’s issues, we affirm the trial court’s 
judgment.
 
                                                          SUE WALKER 
                                                          JUSTICE
 
PANEL B:   DAY, LIVINGSTON, and WALKER, JJ. 
 
DELIVERED: September 25, 2003